NICHOLAS A. SLOAN AND MARY E. SLOAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sloan v. Commissioner
Docket No. 17444-84.
United States Tax Court
T.C. Memo 1988-294; 1988 Tax Ct. Memo LEXIS 324; 55 T.C.M. (CCH) 1238; T.C.M. (RIA) 88294; July 11, 1988. *324 During 1981, P was employed by the Federal government as a computer analyst. He was also an attorney and wished to establish his own law practice after he retired from the government. He performed legal services for clients on weekends during 1981. In performing such services, his primary objective was to gain legal experience, rather than to earn a profit. He sent bills to clients in only a few of the cases handled by him. He did not keep adequate records of the time spent performing legal services, did not carry malpractice insurance, and did not otherwise conduct his law practice in a business-like manner. Held, under the facts and circumstances, P's activities in connection with his law practice did not rise to the level of a trade or business. Held, further, the gross income received from such practice is not subject to self-employment tax. Nicholas A. Sloan, pro se Claire E. Toth, for the respondent. *326 SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency in the petitioners' Federal income tax of $ 11,358.72 for 1981. He also determined that the petitioners were liable for the addition to tax in the amount of $ 823.54 for failing to file a timely return under section 6651(a)(1). [1] After concessions, the issues remaining for our decision are: (1) Whether the petitioners are entitled to deductions claimed by them with respect to a law practice conducted by Mr. Sloan; and (2) whether the petitioners are liable for self-employment taxes on the gross income from Mr. Sloan's law practice. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Nicholas A. Sloan and Mary E. Sloan, husband and wife, resided in Burtonsville, Maryland, at the time they filed their petition in this case. They filed a joint Federal income tax return for 1981 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Mr. Sloan served with the United States *327 armed forces for a number of years during the 1940s and 1950s. He served in France and Australia during World War II and later saw action in Korea during the Korean conflict. After leaving the service in 1959, Mr. Sloan earned a degree in physics and a masters degree and doctorate in electrical engineering. After receiving his doctorate, he secured a teaching position at George Washington University. While Mr. Sloan was teaching at George Washington, he entered the university's law school as a part-time student. His teaching responsibilities offered sufficient flexibility so that he was able to complete law school in 4 years. He graduated from law school in 1974, and he was admitted to the District of Columbia bar in 1976 and to the Maryland bar in 1978. In 1977, Mr. Sloan accepted a position with the United States Department of Justice, not as an attorney, but as a computer systems analyst. His goal was to work for the Justice Department for 4 years, which, when added to the time he spent in the military and in a job at the Defense Communications Agency, would allow him to retire and receive an annuity at age 62. He planned to retire from the government in 1981. Mr. *328 Sloan finished law school when he was around 50. He believed that he was too old to find a job as an associate in a law firm and that the only way he could establish himself as an attorney was to open his own practice. He decided to try to build his private practice [2] by accepting a wide variety of cases. For example, he represented individuals in matrimonial actions, prepared wills, and handled medicaid and worker's compensation claims. Mr. Sloan's primary goal was to gain legal experience from the law practice carried on by him in the late 1970s and early 1980s. For such reason, he often charged extremely low fees for his services; in fact, he sometimes charged no fee. He sent bills to clients in only a few of the cases that he handled. He was not concerned about being paid for his work, because he received a salary from the Justice Department during such time. In 1981, he handled a divorce action for a client on which he spent 50 to 60 hours and for *329 which he was paid $ 100. Also, in 1981, he represented a client in a workers' compensation proceeding and was paid $ 400. Mr. Sloan split such fee with another attorney who assisted him as co-counsel on the case. In addition, Mr. Sloan worked over 100 hours for a client on an unspecified matter from 1978 through 1986 and received $ 200 in fees. Mr. Sloan relied on his government salary to support his family, and his income from his law practice was insufficient for him to leave the government to practice law full time in 1981. Mr. Sloan planned to establish himself as a "country lawyer" on the Eastern Shore of Maryland after his retirement. He spent a few weekends visiting towns which served as the county seats and evaluated the prospects for a law practice in such towns. If Mr. Sloan deemed one particular location to be promising, he attempted to visit the town during business hours. After investigating several communities in such a manner, he decided to set up his law practice in Chestertown, Maryland. In 1979, the Sloans purchased a house situated on the main road through Chestertown, approximately three blocks from the county courthouse. Mr. Sloan established an office *330 on the second floor of the house, which he furnished with file cabinets, desks, and bookcases. He installed a separate telephone line in such office to receive phone calls and rented a post office box to receive mail. He was listed in the local yellow pages as an attorney. Mr. Sloan typically did not stay at the Chestertown house during the week. However, Mrs. Sloan moved there in 1979 so that she could receive phone calls, collect mail from the post office box, and perform office work as necessary. Mrs. Sloan received some telephone calls relation to her husband's law practice in 1981. However, many of such calls were from individuals who needed legal assistance on an emergency basis, and since Mr. Sloan was not at Chestertown during the week, he could not help them. Mr. Sloan often traveled to Chestertown on the weekends. He made 40 or 50 trips to the house in 1981. He spent much of his time at the house organizing his office and reading law-related material. The Sloans did not participate in social activities with their neighbors in Chestertown, and Mr. Sloan did not actively seek clients in the community. Establishing a law practice in Chestertown proved to be difficult *331 for Mr. Sloan. He found that he was unable to break into what appeared to be a "closed society" of attorneys in Chestertown. In addition, Mrs. Sloan decided that she did not like the area. For such reasons, Mr. Sloan concluded that it was not feasible to continue practicing law in Chestertown. The Sloans moved out of the Chestertown house in the fall of 1981. They sold the house in 1982. In 1980, the petitioners purchased a 34-foot houseboat for $ 13,000. The houseboat was equipped with bunks and a galley and was in working order when the petitioners purchased it. They intended to use it for recreation. However the houseboat's engines became "fouled" shortly after the Sloans purchased it, and they could not afford to fix them. Thereafter, Mr. Sloan moved the houseboat to a marina in Washington, D.C., and he converted the boat to an office for his law practice. Mr. Sloan met five or six people on the houseboat in connection with his law practice. However, he did not use the houseboat exclusively for business purposes. He used it occasionally to entertain friends as well. Mr. Sloan also slept aboard the houseboat on occasion; he spent more than 14 nights on it in 1981. *332 During 1981, the Sloans' primary residence was in Burtonsville, which is located approximately 15 miles north of Washington, D.C. The Burtonville residence was a split-level home, with three bedrooms, a recreation room, and a basement. Two of the Sloans' three children lived in the Burtonsville residence during 1981. Mr. Sloan also stayed at the Burtonsville residence most nights during the workweek in such year. Mr. Sloan kept no detailed records of the time that he spent performing legal services. On those occasions when he billed clients, he based his fees upon estimates of the time that he worked on the case. He did not carry malpractice insurance in 1981. While he spent $ 480 in 1981 on bar dues and publications, he did not subscribe to any publications which related particularly to the kinds of cases handled by him. He also did not attend any bar association functions that related to such cases. On the Schedule C attached to their 1981 Federal income tax return, the petitioners deducted various expenses associated with Mr. Sloan's law practice. They claimed deductions for car expenses, depreciation on the houseboat, rental for the slip at the marina for the houseboat, *333 and for utilities, telephone, and insurance for the houseboat. In addition, they claimed deductions for the cost of publications to which Mr. Sloan subscribed and for continuing legal education courses taken by him. They reported gross receipts of $ 640 from Mr. Sloan's law practice. Mr. Sloan did not show a profit from his law practice on any of the Federal income tax returns contained in the record; the petitioners reported losses from his practice of $ 8,006.08 in 1979, $ 10,631.42 in 1980, $ 6,749.20 in 1981, $ 5,858.89 in 1982, and $ 5,050.54 in 1983. The Commissioner issued a notice of deficiency in which he disallowed all of the deductions claimed by the petitioners with respect to Mr. Sloan's law practice in 1981 on the ground that such deductions were not ordinary and necessary expenses paid or incurred in furtherance of any trade or business. The Commissioner also determined that the petitioners were liable for self-employment tax on the gross income from Mr. Sloan's law practice. He also disallowed for lack of substantiation deductions claimed by the petitioners for real estate taxes and interest. Finally, he determined that the petitioner's Federal income tax return *334 for 1981 was not timely filed and determined that they were subject to the addition to tax for late filing under section 6651(a)(1). At trial, the parties stipulated to the deductions which may be claimed by the Sloans for interest and real estate taxes. The Commissioner also conceded that the petitioners are not liable for the addition to tax for late filing of a return. OPINION The first issue for our decision is whether the petitioners are entitled to deductions claimed by them in 1981 with respect to the law practice conducted by Mr. Sloan. The Commissioner disallowed such deductions on the ground that they were not incurred in furtherance of any trade or business. The Sloans bear the burden of proving the Commissioner's determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.[3]
The precise meaning of the phrase "trade or business," as used in the Internal Revenue Code, has proved difficult to capture. As the Supreme Court recently observed, in Commissioner v. Groetzinger,480 U.S.    , 107 S. Ct. 980 (1987), *335 "the phrase is common in the Code, for it appears in over 50 sections and 800 subsections and in hundreds of places in proposed and final income tax regulations. * * * Despite this, the Code has never contained a definition of the words 'trade or business' for general application, and no regulation has been issued expounding its meaning for all purposes." 107 S. Ct. at 983. In Groetzinger, the Court faced the question of whether a full-time gambler who made wagers solely for his own account was engaged in a trade or business. The Court held "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." 107 S. Ct. at 987. After examining all the facts in that case, the Court concluded that the taxpayer's gambling activity constituted a trade or business, within the meaning of section 162. The Court based its decision in part upon findings that the taxpayer devoted all his efforts to his gambling activity and *336 that he relied upon his gambling winnings to support himself. 107 S. Ct. at 983. After carefully considering all the evidence in the record, we conclude that Mr. Sloan's activities in connection with his law practice did not rise to the level of a trade or business. First, Mr. Sloan's testimony at trial demonstrated that he did not conduct his law practice in a business-like manner. Despite working long hours on cases, he rarely charged his clients for his services. Mr. Sloan failed to keep detailed records of the time that he spent performing legal services. On those few occasions that he did bill clients, he based his fees upon estimate of the time he worked on each case. Moreover, he charged extremely low fees for his efforts. He testified that on two instances, he charged clients a fixed amount, which worked out to a fee of less than $ 2 per hour. Mr. Sloan conceded that his job at the Department of Justice provided his primary source of income and that he was not concerned with earning a profit from his law practice in 1981. Rather, he engaged in such activities in the hope of gaining legal experience which he could use when he worked on his practice *337 in earnest after his retirement. Such an intention shows that he was not so much interested in current gain from his practice as he was in attempting to build a foundation for a practice which he hoped to establish in the future. See Owen v. Commissioner,23 T.C. 377, 381 (1954). In our judgment, it also indicates that Mr. Sloan did not engage in the practice of law with the primary purpose of earning a profit. Commissioner v. Groetzinger,107 S. Ct. at 987. Mr. Sloan hoped to open a law practice in Chestertown, on Maryland's Eastern Shore, after he retired from the Justice Department. After a short investigation, he purchased a house in Chestertown and set up a small office on the second floor of the house. Although Mrs. Sloan moved to the house in 1979, Mr. Sloan chose to spend most of his time at the petitioners' principal residence in Burtonsville. Such a decision limited his ability to establish a practice in Chestertown. He usually was in Chestertown only on weekends, when courts were not in session. In addition, because he was not available on weekdays, he could not accept any "hurry-up" cases that came along. Mr. Sloan admitted *338 that he spent much of his time in Chestertown reading and organizing his office. He also admitted that he and his wife rarely went out when he was in Chestertown and did not socialize with members of the community, the very individuals who might have hired Mr. Sloan to represent them. In our view, such actions show that he failed to make a serious effort to establish a practice in Chestertown during 1981. In addition, such conduct also indicates that Mr. Sloan was not involved in his law practice with "continuity and regularity." Commissioner v. Groetzinger,107 S. Ct. at 987. Because we hold that Mr. Sloan did not conduct his legal activities with the primary purpose of earning a profit and was not involved in such activities with continuity and regularity, we conclude that Mr. Sloan's activities in connection with his law practice did not rise to the level of a trade or business. For such reason, the petitioners are not entitled to the deductions claimed by them with respect to such practice. See Cohen v. Commissioner,T.C. Memo. 1984-237. [4] Because of that conclusion, it is unnecessary for us to consider other arguments made by the parties *339 regarding such expenses. The final issue for our decision is whether the petitioners are liable for self-employment taxes on the gross income from Mr. Sloan's law practice. In his notice, the Commissioner disallowed all the deductions claimed by the petitioners with respect to such law practice on the ground that they were not incurred in any trade or business. Such disallowance left gross income of $ 640, which the Commissioner then determined was net earnings from self-employment and subject to self-employment tax under section 1401. Section 1402(a) defines "net earnings from self-employment" subject to tax to mean "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * which are attributable to such trade or business * * *340 *." Section 1402(c) provides generally that the term "trade or business," as used in the self-employment provisions, has the same meaning as when used with respect to section 162, relating to trade or business expenses. We have held that the petitioners are not entitled to the deductions claimed by them with respect to Mr. Sloan's law practice, because such practice did not rise to the level of a trade or business. Similarly, Mr. Sloan did not engage in any trade or business, within the meaning of section 1402(c), and thus did not receive any net earnings from self-employment subject to self-employment tax. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. In this case, we shall occasionally refer to Mr. Sloan's legal activities as his "law practice." We do so only for convenience and do not intend to characterize such activities as an established trade or business. ↩
3. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure. ↩
4. We observe that the parties have not discussed the relevance of sec. 195, which provides for the amortization upon election of "start up" or "pre-opening" expenses associated with a trade or business. For such reason, we do not consider the applicability of such section to this case. ↩